Sylvia Anthony, Administrator of the Estate of Robert David Anthony, Deceased, Plaintiff-Appellee, v. The New York Central Railroad, a Corporation, Defendant-Appellant.

Gen. No. 10,587.

Fourth District.

August 9, 1965.

Rehearing denied September 2, 1965.

Dillavou, Jones, Overaker & Schwartz, of Paris (Ward E. Dillavou, of counsel), and Richard O. Olson of Chicago, for appellant.

Massey, Anderson & Gibson, of Paris (Earl R. Anderson and Ralph S. Pearman, of counsel), for appellee.

CRAVEN, J.

Suit for wrongful death was brought by the administrator of the estate of Robert David Anthony, deceased. A judgment was entered upon a jury verdict in the amount of $14,170 returned in the Circuit Court of Edgar County against the defendant, The New York Central Railroad.

The defendant appeals alleging the following errors:

1. The court erred in failing to direct a verdict because:

    (a) There was no evidence of due care on the part of the plaintiff.

    (b) There was no evidence of negligence on behalf of the defendant.

2. The court erred in limiting inquiry to the deceased's personal habits and past history.

3. The court erred in instructing the jury.

4. The verdict was excessive.

The facts show that the decedent, Robert David Anthony, at the age of nineteen years and eleven

months, together with his wife and Mrs. Linda Downing, were killed in a collision with a New York Central train at the High Street intersection in Paris, Illinois, on December 22, 1962, at 2:00 p. m.

Earlier in the day, Linda Downing, driving the Plymouth automobile, picked up the decedent and his wife at Mrs. Anthony's parents' home in Clinton, Indiana, to take them to the decedent's parents in Paris so the decedent could do some TV repair work there. The car was next seen stopped on High Street in Paris with the right-front car door open and with a man looking under the front of the car. Plaintiff's witness, Kathleen Fulton, stated on cross-examination that the person she saw could have been a woman dressed as a man with a short haircut. Plaintiff's Exhibit 4 shows one of the girls was wearing calf-length slacks and the other blue jeans rolled to calf length.

Mrs. Fulton testified the car started and proceeded slowly north toward the tracks where, south of the crossing, it met and passed a car driven by Jack Pine. Jack Pine testified he was traveling south on High Street and was not aware of the presence of a train until he was on the tracks. He stated he pushed the accelerator to the floor, cleared the crossing and passed the Plymouth just as it was entering the crossing. He testified he heard no whistle, that his hearing was good, and that there was no noise from the car other than the motor. The other occupant of the Pine auto, Jon Tilton Piper, testified to essentially the same facts. Mrs. Fulton testified she heard no whistle, although she did hear the collision. Mr. and Mrs. Bruce Zeigler were driving parallel to the train, a block away, and testified they heard no whistle.

The defendant introduced countervailing evidence that the whistle was sounding and the bell ringing.

The speed of the train is in dispute, as is the extent of obstructions and degree of visibility. The weather was cool and overcast and the pavement partially covered with melting snow.

The decedent was a radio and TV technician. He had contributed most of his earnings to his parents prior to his marriage in July of 1962, some five months before the accident. The decedent's father was blind and the decedent did the household chores around the home and took his father to the doctor and to the barber, and also made repair calls in his father's TV business.

■ The defendant makes the customary argument that the court should have directed a verdict and after having submitted the cause to a jury, should have granted a judgment notwithstanding the verdict because there was *no* evidence of negligence of the defendant and *no* evidence of due care of the plaintiff. The defendant, in the alternative, prays for a new trial because the verdict was against the manifest weight of the evidence. A motion for judgment notwithstanding the verdict raises the same question of law and has the same effect as a motion for directed verdict. Hughes v. Bandy, 404 Ill 74, 87 NE2d 855. Therefore to direct a verdict there must be a total failure to produce proof of an essential element of the plaintiff's case. Pennell v. Baltimore & O. R. Co., 13 Ill App2d 433, 142 NE2d 497. To make this determination the evidence must be viewed in a light most favorable to the plaintiff. Hectus v. Chicago Transit Authority, 3 Ill App2d 439, 122 NE2d 587. All reasonable men must be held to reach the same conclusion. Finley v. New York Cent. R. Co., 19 Ill 2d 428, 167 NE2d 212.

■ There is evidence that no whistle was blown and that the speed of the train was excessive. This evidence was in dispute. However the jury, after hear-

ing the witnesses, was free to accept or reject such testimony in determining the issue of the railroad's negligence.

█ It is true that there is some authority to the effect that failure to hear is merely negative testimony and does not raise an issue of fact; however that rule should be applied only when the witness qualifies his testimony in such a way to indicate that he was not listening, was not in a position to hear or did not remember if he did hear. The only testimony possible to raise an issue of fact in this type of case is that of persons in the vicinity who were in a position to hear a warning and heard none. Under the facts in this case a bona fide issue of fact was raised and submitted to the jury from which it could properly find the defendant negligent.

█ █ On the issue of due care we must assume under the verdict and facts of this case that the jury found the deceased to be a passenger in the car driven by Linda Downing. Since all the occupants of the automobile were killed in the collision, we must determine circumstantially from the surrounding events what evidence there was of due care or contributory negligence on behalf of the deceased. In a most recent opinion (Smith v. Bishop, 32 Ill2d 380, at 384, 205 NE2d 461 (1965)), our Supreme Court held that the affirmative duty of a passenger to warn was as follows:

> "The particular rule applicable here is that unless the passenger sees an obvious danger which the driver might not see there would be no duty to warn him. (Hatcher v. New York Central Railroad Co. 17 Ill2d 587; Smith v. Polukey, 22 Ill App2d 238.)"

The speed of the automobile, the fact that another automobile was passing over the crossing, the evidence

of a lack of a warning whistle, the absence of automatic visible and audible warning devices at the crossing, and the evidence of partial obstruction of view are sufficient for the jury to infer reasonably that the deceased as a passenger was in the exercise of due care for his own safety. Since there is evidence of both negligence and due care, we are not free to substitute our judgment for that of the jury's or say it is manifestly against the weight of the evidence.

The defendant contends that the court committed error in failing to permit inquiry into the deceased's personal habits and past history. During the course of the trial the following offer of proof was made by defense counsel:

"THE COURT—You can make your offer.

"Mr. Dillavou—I want to show by this witness on cross-examination that Robert David Anthony has been because of various types of misbehavior, committed to the Youth Commission and, in fact, sent—was, in fact, committed to the Youth Commission; that his expected future behavior toward parents is not what they are projecting and that in all likelihood he would not be able to support them as they are claiming he would.

"Mr. Anderson—Such a conclusion on such a basis would be obviously—

"THE COURT—Are you objecting?

"Mr. Anderson—Absolutely.

"THE COURT—Objection sustained."

The court's ruling was proper. The misbehavior referred to was remote—some three to four years prior to the decedent's death—and the prejudicial effect of the information sought far outweighs any valid evidentiary inferences. Furthermore the legislature has expressed a definite policy that such

473

commitments are not valid for evidentiary purposes in other criminal or civil proceedings.

> "A disposition of any child under this [Family Court] Act or any evidence given in such cause, shall not, in any civil, criminal or other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever . . . . " (Ill Rev Stats 1963, c 23, § 2001.)

██ ██ Objection is made to the instruction given by the court that where a decedent leaves lineal next of kin there is a presumption of substantial pecuniary loss. This is the law in Illinois. Ferraro v. Augustine, 45 Ill App2d 295, 302, 196 NE2d 16. The instruction is not directory as claimed by the defendant. The jury was free to disregard it if it drew another reasonable inference from the evidence. The instruction expressly qualified the presumption by stating it should be considered, "together with all the facts and circumstances in evidence."

The defendant also objects to the giving of Illinois pattern jury instruction No. 34.05 on life expectancy. The basis for the objection is that the defendant was not allowed to inquire into the decedent's prior misbehavior. The substance of the evidentiary question has been treated earlier in this opinion and the basis for the objection to this instruction is wholly without merit in a wrongful death case.

██ The defendant objects that the court should have read an instruction. tendered by the defense of the decedent's duty to warn of a known danger. The defense relies upon Hatcher v. New York Cent. R. Co., 17 Ill2d 587, 593, 162 NE2d 362, standing for the proposition that where a guest passenger sees an

obvious danger which the driver might not see there would be a duty to warn the driver. There is no evidence that this train was obvious to the decedent and not to the driver, and further there is no evidence that the decedent saw the train and failed to give warning. In the absence of such evidence it would be pointless and confusing to allow the jury to speculate on a supposed breach of duty.

█ █ The defendant further alleges error in the failure of the trial court to instruct the jury on the issue of joint enterprise. There is no evidence here of any joint enterprise. While there is evidence that one of the decedent's reasons for returning to Paris, Illinois, was to do some TV repair work, there is no evidence of a union or concert of intention between Linda Downing and the decedent. The record implies that the transportation supplied by Linda Downing was purely gratuitous and that her interest, if any, in the trip was for social rather than economic reasons. There must be more than a social or gratuitous relationship between the driver and passenger. There must be a joint or mutual interest in the purpose of the trip and the right to control the actions of the driver before an agency relationship is created and the doctrine of respondeat superior made applicable. Fisher v. Johnson, 238 Ill App 25, 31.

█ Finally, the defendant argues the verdict of $14,170 was excessive. The deceased's father was handicapped. He was helped by his son in his business and given monetary contributions in the past. $14,170, payable over the life expectancy of the deceased's mother and father, aged 59 and 57 years, respectively, is certainly not excessive or shocking. There is no evidence that the jury acted from any improper motive. Having considered all alleged er-

rors we do conclude that the judgment entered upon the verdict entered was proper and do therefore affirm the judgment of the circuit court of Edgar County.

Affirmed.

SMITH, P. J. and TRAPP, J., concur.